UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOSEPH S. LESSER and LOEB PARTNERS REALTY LLC,<br><br>                                        Plaintiffs,<br><br>                    -v-<br><br>TD BANK, N.A., CAPITAL ONE, N.A., and DOES 1–10,<br><br>                                        Defendants. | 18 Civ. 9922 (PAE) (GWG)<br><br><u>OPINION & ORDER</u> |

PAUL A. ENGELMAYER, District Judge:

Plaintiffs Joseph S. Lesser and Loeb Partners Realty LLC ("Loeb Realty") bring this lawsuit against defendants TD Bank, N.A. ("TD"), Capital One, N.A. ("Capital One"), and unidentified Does 1–10 ("Doe Banks"), asserting claims of negligence, conversion, and violation of N.Y. U.C.C. § 3-419.  Specifically, plaintiffs allege that their former employee, non-party Thomas Kennedy, fraudulently cashed checks made out to and issued by plaintiffs, and that defendants improperly allowed Kennedy to deposit those checks.

On November 28, 2018, TD moved to dismiss the complaint.  *See* Dkt. 15 ("TD Mem."). On November 30, 2018, Capital One moved to dismiss the complaint.  *See* Dkt. 19 ("Capital One Mem.").  Before the Court is the April 23, 2020 Report and Recommendation of the Hon. Gabriel W. Gorenstein, Magistrate Judge, Dkt. 38 ("Report"), as well as Capital One's objections, Dkt. 41 ("Capital One Objections"), TD's objections, Dkt. 42 ("TD Objections"), plaintiffs' objections, Dkt. 43 ("Pl. Objections"), TD's response to plaintiffs' objections, Dkt. 44 ("TD Response"), plaintiffs' response to defendants' objections, Dkt. 45 ("Pl. Response"), and Capital One's response to plaintiffs' objections, Dkt. 46 ("Capital One Response").  The Report

recommends that the Court grant Capital One's motion, without prejudice, and that the Court deny TD's motion with respect to plaintiffs' § 3-419 and conversion claims predicated on inbound checks, but grant TD's motion as to plaintiffs' negligence claim.  For the following reasons, the Court adopts the Report in its entirety.

## I.     Background

The Court adopts the Report's detailed account of the facts and procedural history, to which no party objects.  The following summary captures the facts necessary for an assessment of the issues presented.[1]

### A.     The Parties

Lesser is an individual who resides in New York, New York.  Compl. ¶ 2.  Lesser is the Chairman of Loeb Realty, a Delaware Limited Liability Company whose members are residents of New York.  *Id.* ¶¶ 2–3; Notice ¶ 9.[2]

TD is a national banking association with its principal place of business in Delaware. Compl. ¶ 4; Notice ¶ 10.  Capital One is a national banking association with its principal place of business in Virginia.  Compl. ¶ 5; Notice ¶ 11.  The Doe Banks are unidentified banks that honored checks that were either written by, or payable to, plaintiffs.  Compl. ¶ 6.

Non-party Thomas Kennedy is a former employee of Loeb Realty, whom the Complaint alleges fraudulently cashed checks either written by plaintiffs or made out to plaintiffs.  *Id.* ¶¶ 9,

---

[1] The Court's account of plaintiffs' factual allegations is drawn primarily from the Complaint, Dkt. 1-5 ("Compl."), with additional background information drawn from the Report and from defendants' notice of removal, Dkt. 1 ("Notice").  For the purpose of resolving the motion to dismiss under Rule 12(b)(6), the Court assumes all well-pled facts to be true and draws all reasonable inferences in favor of plaintiffs.  *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

[2] *See Bayerische Landesbank v. Aladdin Capital Mgmt. LLC*, 692 F.3d 42, 49 (2d Cir. 2012) ("[a] limited liability company . . . takes the citizenship of each of its members" for diversity purposes).

2

12.  Kennedy has been charged with grand larceny and was awaiting trial in New York Supreme

Court at the time of the filing of the Complaint.  *Id.* ¶ 30.  Kennedy opened and maintained

personal bank accounts with TD, Capital One, and the Doe Banks.  *Id.* ¶ 11.

    **B.**    **Kennedy's Unauthorized Cashing of Checks**

    During his employment with Loeb Realty, Kennedy intercepted and misappropriated

checks made out to plaintiffs (the "inbound checks") and checks written by Lesser payable to

third parties (the "outbound checks").[3]  *Id.* ¶ 12.  For both the inbound and outbound checks,

Kennedy endorsed the intercepted checks with his own signature and "cash[ed] them into one of

his accounts."  *Id.*

    The outbound checks were drawn against Lesser's checking account ("JPMC account")

at a bank operated by non-party J.P. Morgan Chase ("JPMC").  *Id.* ¶ 7.  Lesser was the only

authorized signatory on the JPMC account, and JPMC had Lesser's signature on file.  *Id.* ¶ 8.

The Complaint alleges that none of the inbound or outbound checks were endorsed by Kennedy

using a signature that matched the name of the payee.  *Id.* ¶ 17.  However, TD, Capital One, and

the Doe Banks did not ask JPMC for Lesser's filed signature prior to allowing money to be

drawn on the checks.  *Id.* ¶ 13.

---

[3] The Complaint identifies the following checks, identified by payor and check amount, as "inbound checks": Aetna Insurance ($225.60), Merchants National Properties ($15,060.00), Merchants National Properties ($45,180.00), Aetna Insurance ($2,046.20), Aetna Insurance ($1,917.60), Aetna Insurance ($1,184.80), Merchants National Properties ($15,060.00), ECP-1 ($26,631.00), and NYS Tax Refund ($500.00).  Compl. ¶ 16.

The Complaint further identifies the following checks, identified by payee and check amount, as "outbound checks": DSCC ($1,000.00), March of Dimes ($100.00), Congregation Beth Shalom ($200.00), Congregation Emanu-El ($5,000.00), Thirteen WNYC ($250.00), The Eye Bank for Sight Restoration ($115.00), Congregation Emanu-El ($5,000), Wounded Warrior Project ($250.00), Doctors Without Borders ($200.00), NY Public Library ($100.00), DSCC ($150.00), Orbis ($100.00), and National WWII Museum ($500.00).  *Id.*

Defendants honored at least $120,870.20 of checks fraudulently endorsed by Kennedy. *Id.* ¶ 20. Some of the checks were deposited via computer-controlled ATM or mobile banking applications that permit individuals to deposit checks without human interaction. *Id.* ¶¶ 21–26. The defendants did not notify plaintiffs of any suspicious banking activity. *Id.* ¶ 27. Plaintiffs allege that at least one defendant—unidentified in the Complaint—learned of Kennedy's fraudulent activity but did not notify plaintiffs. *Id.* ¶ 29.

On May 31, 2018, after Lesser became aware of Kennedy's fraudulent behavior, Lesser contacted TD and demanded that it stop processing checks presented by Kennedy for deposit and contact Lesser's counsel. *Id.* ¶ 32. TD did not respond to that contact, *id.* ¶ 33, nor did it respond to a July 5, 2018 letter from plaintiffs' counsel, *id.* ¶¶ 34–35. The Complaint alleges that Capital One was alerted to Kennedy's fraudulent behavior by the Office of the New York Attorney General, but has not reimbursed plaintiffs for the checks it honored. *Id.* ¶ 38. The Complaint further alleges that the Doe Banks were made aware of Kennedy's fraudulent behavior but also have not reimbursed plaintiffs for the checks they honored. *Id.* ¶¶ 40–41.

### C.   Procedural History

On September 26, 2018, plaintiffs filed the Complaint in New York Supreme Court, bringing causes of action for negligence, violation of § 3-419, and conversion against all defendants for the inbound and outbound checks each of the defendants honored. Compl. On October 26, 2018, defendants removed this action to this Court. *See* Notice.

On November 28, 2018, TD moved to dismiss the Complaint. *See* TD Mem. On November 30, 2018, Capital One moved to dismiss the Complaint. *See* Capital One Mem. On December 12, 2018, plaintiffs filed their opposition to TD's motion, Dkt. 21 ("Pl. TD Opp."), as well as an affirmation of Hillel I. Parness, Esq., which requested that the Court take judicial notice of bank records, not referenced in the Complaint, that purportedly show Lesser had a

4

separate unrelated bank account at TD, Dkt. 21-1 ("Parness I Aff.").  On December 14, 2018, plaintiffs filed their opposition to Capital One's motion, Dkt. 22 ("Pl. Capital One Opp."), as well as a second affirmation of Hillel I. Parness, Esq., which requested that the Court take judicial notice of records purportedly showing that several inbound checks were drawn on an account at Capital One, Dkt. 22-1 ("Parness II Aff.").  On January 10, 2019, Capital One filed its reply, Dkt. 27 ("Capital One Reply"), and on January 11, 2019, TD filed its reply, Dkt. 28 ("TD Reply").

On November 14, 2019, the Hon. Deborah A. Batts, District Judge, who was then presiding over this litigation, referred the motions to Judge Gorenstein for a report and recommendation.  Dkt. 31.  On February 10, 2020, Judge Gorenstein directed the parties to submit supplemental briefing addressing three issues: (1) whether plaintiffs had adequately pled that defendants had failed to act in accordance with reasonable commercial standards under § 3-419; (2) whether plaintiffs were the "true owner," as defined under § 3-419, of the inbound checks; and (3) whether the parties would be willing to deem the Complaint amended to include the allegations contained in the Parness affirmations.  Dkt. 32.

On February 20, 2020, this litigation was reassigned to this Court.  On February 21, 2020, Capital One filed a supplemental brief.  Dkt. 33 ("Capital One Supp. Mem.").  That same day, TD also filed a supplemental brief.  Dkt. 34 ("TD Supp. Mem.").  Both defendants consented to the Court's treating the Complaint as amended to include the allegation that Lesser held two bank accounts at TD through the period in question.  *See* TD Supp. Mem. at 6; Capital One Supp. Mem. at 5.  However, Capital One declined to consent to the Court's deeming the Complaint amended to include plaintiffs' allegations that several of the inbound checks—for which plaintiffs were payees, rather than drawers—were drawn out of accounts maintained by

Capital One.  Capital One Supp. Mem. at 5–6.[4]  On February 28, 2020, plaintiffs filed a supplemental brief in opposition.  Dkt. 35 ("Pl. Supp. Mem.").  On March 4, 2020, Capital One and TD each filed supplemental reply letters.  Dkt. 36 ("Capital One Supp. Reply"); Dkt. 37 ("TD Supp. Reply").

On April 23, 2020, Judge Gorenstein issued the Report.  On May 14, 2020, each party filed objections to the Report.  *See* Capital One Objections; Pl. Objections; TD Objections.  On May 28, 2020, each party responded to the others' objections.  TD Response; Pl. Response; Capital One Response.

## II.    Applicable Legal Standards

### A.    Report and Recommendation

In reviewing a report and recommendation, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).  When specific objections are made, "[t]he district judge must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to."  Fed. R. Civ. P. 72(b)(3); *United States v. Male Juvenile*, 121 F.3d 34, 38 (2d Cir. 1997).  To accept those portions of the report to which no timely objection has been made, "a district court need only satisfy itself that there is no clear error on the face of the record."  *King v. Greiner*, No. 02 Civ. 5810 (DLC), 2009 WL 2001439, at *4 (S.D.N.Y. July 8, 2009) (citing *Wilds v. UPS*, 262 F. Supp. 2d 163, 169 (S.D.N.Y. 2003)); *see also Edwards v. Fischer*, 414 F. Supp. 2d 342, 346–47 (S.D.N.Y. 2006).

---

[4] The Report accordingly treated the Complaint as amended to include only the allegation that Lesser held bank accounts at TD, on consent of all parties.  Report at 22–23; *see also* Report at 6 (denying plaintiffs' broader request for judicial notice).  No party objects to the Report's treatment of the additional factual allegations related to either TD or Capital One.

To the extent that the objecting party makes only conclusory or general objections, or simply reiterates the original arguments, the court will review the report and recommendation strictly for clear error. *See Dickerson v. Conway*, No. 08 Civ. 8024 (PAE), 2013 WL 3199094, at *1 (S.D.N.Y. June 25, 2013); *Kozlowski v. Hulihan*, Nos. 09 Civ. 7583, 10 Civ. 0812 (RJH), 2012 WL 383667, at *3 (S.D.N.Y. Feb. 7, 2012). Further, "[c]ourts generally do not consider new evidence raised in objections to a magistrate judge's report and recommendation." *Tavares v. City of New York*, No. 08 Civ. 3782 (PAE), 2011 WL 5877548, at *2 (S.D.N.Y. Nov. 23, 2011) (citation omitted).

### B.    Motions to Dismiss Under Rule 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim will only have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint is properly dismissed where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. When resolving a motion to dismiss, the court must accept as true all well-pled factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *Steginsky v. Xcelera, Inc.*, 741 F.3d 365, 368 (2d Cir. 2014). That tenet, however, "is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. Pleadings that offer only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

## III.    Discussion

Judge Gorenstein recommends granting Capital One's motion, without prejudice, denying TD's motion with respect to plaintiffs' § 3-419 and conversion claims predicated on

inbound checks, and granting TD's motion as to plaintiffs' negligence claim.  Specifically, Judge

Gorenstein concluded that plaintiffs may bring claims under § 3-419 and for conversion against

either defendant only for honoring "inbound" checks, not "outbound" checks—*i.e.*, checks

written *to* Lesser or Loeb Realty that were intercepted by Kennedy, but not checks written *by*

Lesser or Loeb Realty.  Because there were both inbound and outbound checks honored by TD,

but only outbound checks honored by Capital One, Judge Gorenstein recommended dismissing

all claims brought under § 3-419 and for conversion, except for those related to TD's honoring of

inbound checks.  *See* Report at 18–20.  Judge Gorenstein further concluded that plaintiffs' claim

for negligence should be dismissed as duplicative of and precluded by the claims under § 3-419

and for conversion.  *See id.* at 20–21.  Judge Gorenstein explained that, even taking into account

plaintiffs' allegation that Lesser held two bank accounts at TD during the relevant period,

plaintiffs could not state an independent claim for negligence based on Lesser's unrelated bank

accounts at TD.  *See id.* at 22.

> Plaintiffs, Capital One, and TD each object to the Report, on various grounds.  The Court

analyzes each party's objections in turn.

> As to the balance of the Report, to which no party has objected, the Court has carefully

reviewed Judge Gorenstein's thorough and thoughtful analysis and finds no clear error.  *See*

*King*, 2009 WL 2001439, at *4.

### A.     Plaintiffs' Objection

> Plaintiffs object solely to Judge Gorenstein's "conclusion that Lesser's maintenance of

two bank accounts at TD"—which were unrelated to the allegations in the Complaint—"would

not give rise to a duty running from TD to Lesser" with regard to the checks Kennedy cashed and

TD honored.  Pl. Objections at 2.[5]  Plaintiffs argue that Judge Gorenstein incorrectly recommends dismissal of their negligence claim against TD as duplicative, despite what plaintiffs argue is an independent duty TD owed Lesser as an accountholder encompassing both inbound and outbound checks.

Plaintiffs' objection repeats the same argument that plaintiffs made before Judge Gorenstein.  *See* Pl. Objections at 6 (quoting Pl. TD Opp. at 6) (citing Pl. Supp. Mem. at 9–10).  Accordingly, review for clear error is appropriate.  *See Dickerson*, 2013 WL 3199094, at *1; *Kozlowski*, 2012 WL 383667, at *3.  The Court has carefully reviewed the Report's analysis of this issue and can find no such error.

In any event, plaintiffs' negligence claim against TD fails under any standard of review.  "A plaintiff may not 'sidestep' the UCC by merely attempting to restate a failed UCC claim as a common law cause of [negligence]."  *Tripp & Co. v. Bank of N.Y. (Del.), Inc.*, 911 N.Y.S.2d 696, 2010 WL 2836999, at *5 (Sup. Ct., N.Y. Cty. 2010) (table).  Plaintiffs' cause of action here is "duplicative" of and precluded by the "cause of action for conversion under UCC 3-419." *Kaplan v. Valley Nat'l Bank*, 41 N.Y.S.3d 719, 2016 WL 3939922, at *5 (Sup. Ct., Suffolk Cty. 2016) (table).  Accordingly, dismissal is appropriate.  *See, e.g.*, *id.* (dismissing claim of negligence for forged endorsement where § 3-419 claim was also pled); *Tripp & Co.*, 2010 WL 2836999, at *5 (same).  Plaintiffs did not argue to the contrary in opposing the motion, *see* Report at 21, nor do they object to the Report on this ground, *see* Pl. TD Opp.

---

[5] Plaintiffs' objections additionally state that "Plaintiffs do not [otherwise] object to [Judge Gorenstein's Report as it relates to the disposition of the two motions, and advise the Court and Defendants that they intend to amend the Complaint to add a claim against Capital One regarding the three checks that were drawn against accounts at Capital One." Pl. Objections at 2. The Court interprets this response as a statement of plaintiffs' intentions, not as an objection to any part of the Report.

Plaintiffs instead latch onto TD's original argument—made before plaintiffs' attempt to amend the Complaint through their opposition to the motion to dismiss—that "[a]s a general matter, '[b]anks do not owe non-customers a duty to protect them from the intentional torts of their customers.'"  TD Mem. at 11 (quoting *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 286–87 (2d Cir. 2006) (collecting cases)).  Citing no authority, plaintiffs argue that, because Lesser held two accounts at the bank, TD therefore owed Lesser a duty to protect him from Kennedy's fraudulent deposit of checks involving an entirely unrelated account—*i.e.*, Kennedy's TD account.  Accordingly, plaintiffs seek to amend their complaint to state a new negligence claim on this basis.

The Court is highly skeptical of plaintiffs' argument that TD's duties to Lesser here extended to preventing another customer's use of an entirely unrelated account to commit intentional torts that caused injury to plaintiffs.[6]  The Court need not reach this question, however, because such a negligence claim would still be precluded, requiring dismissal.  *See Kaplan*, 2016 WL 3939922, at *5.  Plaintiffs argue that their negligence claim is not duplicative because it would encompass both inbound and outbound checks, whereas their other claims can be brought only with respect to inbound checks.  Pl. Objections at 7.  But, as the Report thoughtfully explains at length, "[u]nder the common-law rule, the drawer of a check 'does not have a direct cause of action against a depositary bank for collecting an improperly indorsed

---

[6] The rationale behind the rule that banks do not owe non-customers such a duty is instructive here.  New York courts have explained that a contrary rule "would . . . unreasonably expand banks' orbit of duty."  *Century Bus. Credit Corp. v. N. Fork Bank*, 668 N.Y.S.2d 18, 19 (1st Dep't 1998); *see also, e.g.*, *Lerner*, 459 F.3d at 286–87 ("With billions of banking transactions occurring in New York alone, this would be the equivalent of making New York banks liable to the world's banking public." (internal quotation marks and citation omitted)).  Plaintiffs' proposed rule—which no court appears ever to have adopted—would similarly unreasonably expand banks' ambit of duty and create a windfall for customers like Lesser who, through happenstance, maintain an entirely unrelated account at the relevant banking institution.

check.'"  Report at 15 (quoting *Horovitz v. Roadworks of Great Neck, Inc.*, 76 N.Y.2d 975, 976 (1990)).  "[T]he common-law rule in this State before enactment of the Code was that a drawer had no direct action against a depositary bank; its remedy was against the drawee bank," and "[t]he Code . . . did not change the rule."  *Prudential-Bache Sec., Inc. v. Citibank, N.A.*, 73 N.Y.2d 263, 272 (1989) (citation omitted).  On the contrary, it "added defenses that make it even more difficult for a drawer to recover against a depositary bank."  *Id.* (citation omitted); *see* Report at 14–18 (analyzing application of common-law rule and explaining that it precludes plaintiffs' claims as drawers—*i.e.*, as to the outbound checks—and that any cause of action as to the outbound checks would be against the drawee bank, JPMC).

Thus, even accepting that Lesser had an unrelated bank account at TD, plaintiffs' negligence claim regarding the outbound checks is precluded by the common-law defense afforded depositary banks.  Accordingly, that claim is duplicative of the § 3-419 claim and must be dismissed.  *Kaplan*, 2016 WL 3939922, at *5; *Tripp & Co.*, 2010 WL 2836999, at *5.

### B.    Capital One and TD's Objection to Dismissal Without Prejudice

Capital One objects solely on the ground that dismissal of the Complaint should be with prejudice, because any amendment would be futile.  TD similarly objects to the Report "to the extent that it recommends that [p]laintiffs be granted leave to file an amended complaint."  TD Objections at 21.  The Court reviews this objection *de novo*.  *See* Fed. R. Civ. P. 72(b)(3).[7]

---

[7] Arguably, review for clear error would be appropriate here, given that Capital One's objection recapitulates Capital One's position before Judge Gorenstein.  *See* Capital One Objections at 6 ("Accordingly, for the reasons already set forth in Capital One's Reply, Capital One respectfully requests that the Court recognize the futility of any amendment and dismiss the Complaint with prejudice as against Capital One."); *see also Dickerson*, 2013 WL 3199094, at *1; *Kozlowski*, 2012 WL 383667, at *3.  In any event, dismissal, without prejudice, is appropriate under any standard of review.

Federal Rule of Civil Procedure 15 provides that courts "should freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a)(2).  When a district court dismisses claims based on a deficient pleading, "[i]t is the usual practice . . . to allow leave to replead," *Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991), although "[a] district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party," *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007).  *See also, e.g.*, *Hayden v. County of Nassau*, 180 F.3d 42, 53 (2d Cir. 1999) ("When a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint." (citation omitted)).

As reviewed above, the Report correctly concludes that plaintiffs' claims regarding outbound checks are precluded by the common-law defense afforded depositary banks. Accordingly, the Report recommends that all claims against Capital One be dismissed, because the Complaint ties Capital One only to outbound checks.  *See* Report at 14–18.

However, for the first time in their memorandum of law opposing Capital One's motion to dismiss, plaintiffs cited to documents that appear to indicate that several *inbound* checks—for which plaintiffs were payees rather than drawers—were drawn out of accounts at Capital One. *See* Pl. Capital One Opp. at 7; Parness II Aff.  Such allegations would situate Capital One more similarly to TD—*i.e.*, having honored both inbound and outbound checks.  Judge Gorenstein inquired whether Capital One would consent to deeming the existing complaint amended to include this allegation.  Dkt. 32.  Capital One declined to so consent, *see* Capital One Supp. Mem. at 5–6; Capital One Supp. Reply at 6–7, and, for the reasons provided in the Report, the Court cannot otherwise take judicial notice of such documents or allegations, Report at 6, 22–23. Accordingly, neither the Report nor the Court in this order considered plaintiffs' allegations

12

regarding inbound checks.  Referring to the inbound checks, however, Judge Gorenstein recommends that "[d]ismissal of any claims in the existing complaint against Capital One, however, should be accompanied by leave to plaintiffs to file an amended complaint if they can cure any defects in their original pleading."  Report at 23.

Capital One does not—and cannot—argue that bad faith, undue delay, or undue prejudice are at play here.  Capital One had the opportunity to litigate fully a motion to dismiss plaintiffs' allegations relating to the inbound checks and declined to take it.  Any delay in this case has been no fault of plaintiffs, and the Court has not yet issued a scheduling order in this case.  *Cf. BPP Ill., LLC v. Royal Bank of Scot. Grp. PLC*, 859 F.3d 188, 195 (2d Cir. 2017) (more strictly scrutinizing request for amendment where a scheduling order governs amendments to the complaint).

Instead, Capital One argues that the plaintiffs' yet-to-be-pled claims are barred as a matter of law, and thus futile.  Capital One suggests that, under New York law, plaintiffs ratified any alleged misconduct by Capital One, waiving their right to seek recovery from Capital One on claims related to the three inbound checks.  Capital One Objections at 5 (citing Capital One Reply at 7–9).  Specifically, Capital One argues that, by alleging in the Complaint that TD, as depositary bank, acted improperly with regard to the three checks, plaintiffs ratified Capital One's actions as the drawee bank.  Capital One Reply at 8.

Capital One relies entirely on *Whalen v. Chase Manhattan Bank, N.A.*, No. 99 Civ. 11161 (RO), 2000 WL 1801839 (S.D.N.Y. Dec. 7, 2000), for its ratification argument.  But, as the Second Circuit explained in rejecting the use by the district court in *Whalen* of the ratification doctrine, that case involved a plaintiff's "*third* suit in connection with the forged check," which raised the question "whether a payee can institute an action against a drawee bank after she has

13

already recovered money from a depository bank." *Whalen v. Chase Manhattan Bank, N.A.*,

14 F. App'x 120, 121 (2d Cir. 2001) (emphasis original).  Accordingly, the Circuit affirmed the

district court on the alternative ground that Whalen's suit was barred by the doctrine of judicial

estoppel, *id.* at 121–22, which, *inter alia*, requires "[t]hat a litigant (i) took a prior inconsistent

position and (ii) convinced an earlier tribunal to adopt that position [as] *necessary* conditions for

judicial estoppel to be imposed," *Clark v. AII Acquisition, LLC*, 886 F.3d 261, 266 (2d Cir. 2018)

(emphasis added).  Because plaintiffs here have not convinced any tribunal that TD is liable as

the depository bank on Capital One's three inbound checks, judicial estoppel cannot apply.

Thus, without prejudice to Capital One's ability to argue that plaintiffs ratified Capital

One's actions in a future motion to dismiss plaintiffs' amended complaint, the Court cannot

conclude that a specific amendment to allege claims against Capital One relating to the three

inbound checks would be futile on the present record.[8]  Accordingly, the Court grants plaintiffs

leave to amend their complaint to add allegations regarding the three checks cited in their

opposition papers.

### C.    TD's Additional Objections

TD raises four additional objections to the Report: that (1) plaintiffs were not the "true

owners" of the inbound checks; (2) TD acted in accordance with reasonable commercial

---

[8] To be clear, the Court reads the Report's recommendation that "[p]laintiffs should be granted leave to amend their complaint if they can cure any defects in the original pleading," Report at 24, more narrowly than TD or Capital One's objections fear.  Plaintiffs have indicated no interest in challenging the Report's conclusions, adopted by this order, that their claims relating to outbound checks are barred as a matter of law, and plaintiffs have similarly indicated no intent to amend such claims. *See, e.g.*, Pl. Objections at 4–5 (plaintiffs' only planned amendment as to Capital One is to allege that three checks were drawn on accounts at Capital One).  For avoidance of doubt, the Court regards any amendment as to outbound checks as futile.  As to TD's vague concerns about plaintiffs' lack of particularity with regard to their amended complaint, plaintiffs (and the Report) are sufficiently particular in addressing the relevant amendment: one alleging that Capital One was the drawee bank as to three checks cashed by Kennedy.

14

standards; (3) § 3-419 is limited to "forged indorsements"; and (4) plaintiffs' conversion claim should be dismissed.  The Court reviews each objection in turn.

### 1. True Owners

TD first objects that plaintiffs were not the "true owners" of the inbound checks because the Complaint insufficiently alleges an agency relationship between Kennedy and Lesser.[9]

The New York Court of Appeals has held that § 3-419's provision that a depository bank is liable only to the "true owner" of a converted instrument requires that "either actual or constructive delivery to the payee is a necessary prerequisite to a conversion action under § 3-419." *State v. Barclays Bank of N.Y., N.A.*, 76 N.Y.2d 533, 537 (1990).  *Barclays Bank* thus "conclusively established as New York law that a payee may maintain [an action under § 3-419] . . . only if the payee at some time possessed the instrument in question." *Lund v. Chem. Bank*, 760 F. Supp. 51, 53 n.2 (S.D.N.Y. 1991).  TD concedes that "*Barclays Bank* contemplates that there can be 'constructive' delivery . . . when the check is physically delivered [to] . . . an agent of the payee."  TD Objections at 10 (internal quotation marks and citation omitted).  However, TD insists that the Report erred in concluding that the Complaint adequately alleges that Kennedy served as an agent for both Lesser and Loeb Realty.  *Id.*

The Court adopts the Report's thoughtful analysis of this issue.  The Complaint alleges that Kennedy was an "employee" of Loeb Realty (of which Lesser was chairman and co-owner),

---

[9] After the parties failed to address this issue initially, Judge Gorenstein solicited supplemental briefing on whether plaintiffs were "true owners" of the checks at issue under § 3-419.  Dkt. 32.  TD's first objection repeats the same argument that TD unsuccessfully presented to Judge Gorenstein in its supplemental briefing.  *See* Report at 10 (explicitly rejecting TD's argument that the Complaint fails to plead an "agency" relationship); *compare* TD Objections at 7–12, *with* TD Supp. Reply at 3–5.  Accordingly, review for clear error is appropriate.  *See Dickerson*, 2013 WL 3199094, at *1; *Kozlowski*, 2012 WL 383667, at *3.  The Court has carefully reviewed the Report's analysis of this issue and finds no such error.  In any event, the Report's analysis and conclusion withstand *de novo* review.

Compl. ¶¶ 2, 9, and that, as part of his employment, Kennedy was responsible for handling "inbound and outbound mail for plaintiffs, including . . . inbound mail containing checks made out to" Loeb Realty and to Lesser, *id.* ¶ 10. Kennedy allegedly would "intercept and misappropriate" inbound checks "that were made out to the plaintiffs." *Id.* ¶ 12. At bottom, TD's objection is a qualm with Lesser's "ill-advised decision to have checks for which he is the personal payee directed to his place of business." TD Objections at 13. However, drawing all reasonable inferences in plaintiffs' favor, it is entirely plausible that Kennedy was acting as an agent for both Loeb Realty *and* Lesser when he unlawfully took possession of the checks, during the course of his regular duties handling inbound mail containing checks for both the company and its chairman. *See* Report at 9–11; Pl. Response at 2–3. Thus, at this stage, plaintiffs' allegations suffice to establish plaintiffs' standing as "true owners" of the inbound checks.

### 2.    Reasonable Commercial Standards

TD next objects to the Report's conclusion that the Complaint adequately pleads that TD failed to act in accordance with reasonable commercial standards. *See* TD Objections at 13; Report at 11–14.[10]

Under § 3-419(3), a depositary bank that has acted in good faith and "in accordance with the reasonable commercial standards" cannot be liable for conversion, other than for any proceeds remaining in its hands. The Report assumed without deciding that plaintiffs bear the burden of proof on this issue, concluding that "the facts here easily support the inference that the banks failed to act in accordance with reasonable commercial standards." Report at 11.

The Complaint alleges that Kennedy deposited each check at issue with the defendant banks and endorsed those checks with his own signature. Compl. ¶¶ 12, 17–18. The Complaint

---

[10] Judge Gorenstein also solicited supplemental briefing on this issue after the parties failed to address it in their briefing. Dkt. 32.

further alleges that Kennedy was not the named payee of any of the checks.  *Id.*  Although the

U.C.C. does not define "reasonable commercial standards," New York courts have generally

held that a depository bank's acceptance of a check with the endorsement of an individual other

than the payee is commercially unreasonable.  *See, e.g.*, *Nat'l Union Fire Ins. Co. of Pittsburgh

v. Castellano*, 102 A.D.3d 662, 663 (2d Dep't 2013) ("The checks at issue in this case, which

were made payable to 'Canon U.S.A., Inc., ATTN: Jim Castellano,' were payable solely to the

order of Canon, and therefore it was commercially unreasonable as a matter of law for

[depository bank] to accept them for deposit without Canon's indorsement."); *Nat'l Title Ins. of

N. Y., Inc. v. Spectrum Settlement Grp.*, 13 Misc. 3d 1239(A), 2006 WL 3361550, at *3

(Sup. Ct., Suffolk Cty. 2006) ("[t]he acceptance and deposit of [a] check without a proper

endorsement from the payee" is "unreasonable as a matter of law"); *Millens v. Kingston Tr. Co.*,

461 N.Y.S.2d 938, 941 (Sup. Ct., Ulster Cty. 1983) (finding "as a matter of law" that where "a

check is drawn to a named payee and is either not endorsed at all or is endorsed in the name of a

stranger to the check . . . without further endorsement on the behalf (forged or otherwise) of the

named payee" and is deposited into "an account other than the account of the named payee . . .

any reasonable commercial standard" is violated).

TD objects that its use of automated processes to review check endorsements was in

accord with banking industry practice and thus could not have violated reasonable commercial

standards, even if TD's processes resulted in its acceptance of checks endorsed by Kennedy.  At

this stage in the litigation, the Court cannot agree.  Drawing all inferences in plaintiffs' favor, the

Complaint does not permit the conclusion that TD acted in accordance with reasonable

commercial standards; the Court cannot assume as true that TD followed certain procedures or

that those procedures were standard in the industry.  Notably, the key case cited by Capital One

17

in support of this argument before Judge Gorenstein, and both cases cited by TD in its objections, all involved grants of *summary judgment*, where the record established that the defendant bank's processes were reasonable.  *See Sullivan v. Citibank, N.A.*, 306 A.D.2d 459, 459 (2d Dep't 2003) (affirming grant of summary judgment where the defendant bank submitted "a detailed, comprehensive, expert affidavit concluding that its procedures in processing the stolen checks comported with reasonable commercial standards regarding the processing of checks deposited in automated banking machines"); *DBI Architects P.C. v. Am. Express Travel-Related Servs. Co.*, 388 F.3d 886, 895 (D.C. Cir. 2004) (applying District of Columbia law and affirming summary judgment finding that "automated processing of checks is a commercially reasonable practice in the banking industry"); *Watson Coatings, Inc. v. Am. Express Travel Related Servs., Inc.*, 436 F.3d 1036, 1041–42 (8th Cir. 2006) ("Where a bank or payee electronically processes checks pursuant to its normal procedures and does not employ automated procedures that unreasonably vary from general banking usage, no genuine issue of material fact exists as to whether the payee's automated processing of checks is commercially reasonable.").  In short, at this stage, it is at least plausible that defendants' acceptance of the Kennedy-endorsed checks was unreasonable.  Nothing TD has pointed to in the Complaint or the case law allows the Court to conclude, on the pleadings, that such acceptance was, in fact, reasonable.

### 3.    Forged Indorsement

TD next contends that the Report erred in concluding that allegations of a forgery of the signature of a check's actual named payee are not required to support a § 3-419 claim.  TD Objections at 17; *see* Report at 12.

Section 3-419(1)(c) provides that "[a]n instrument is converted when . . . it is paid on a forged indorsement."  Citing principles of statutory construction, but not citing any authority

construing the relevant provision, TD argues that § 3-419 therefore requires an explicit allegation

of a "forged indorsement," as opposed to, for example, an unauthorized signature.  TD

Objections at 18–19.  However, under New York law, "§ 3-419(1) imposes liability for . . .

conversion upon anyone who pays a check over a forged endorsement *or negotiates a check*

*improperly*."  *Spectrum Settlement Grp.*, 2006 WL 3361550, at *2 (emphasis added); *see also,*

*e.g.*, *Millens*, 461 N.Y.S.2d at 941 (§ 3-419 imposes liability where "a check is drawn to a named

payee and is either not endorsed at all or is endorsed in the name of a stranger to the check or . . .

without endorsement on the behalf (forged or otherwise) of the named payee").  Thus, § 3-419

does not require a specific allegation of forgery.  Accordingly, the Court rejects TD's argument

and accepts the Report's recommendation.

### 4.        The Common-Law Conversion Claim

Finally, TD objects to the Report's recommendation that plaintiffs be permitted to

proceed with their common-law conversion claim, which is based on the same allegations that

support their U.C.C. § 3-419 claim.  TD Objections at 19–20; *see* Report at 20–21.

Section 3-419 defines the circumstances in which an instrument "is converted."  N.Y.

U.C.C. § 3-419(1).  Thus, it appears that a claim brought under § 3-419 is, in fact, a claim for

conversion.  A claim arising under § 3-419 "has all of the attributes of the common-law action of

conversion."  *Clients' Sec. Fund of State of N.Y. v. Goldome*, 560 N.Y.S.2d 84, 86 (Sup. Ct.,

Monroe Cty. 1990) (citation and internal quotation marks omitted).  Accordingly, the Report

recommended that "[f]or now, the references to both Section 3-419 and common-law conversion

should be permitted to remain in the complaint," but that "all the defenses available to the

defendants in a claim under Section 3-419 are available in a claim for [common-law]

conversion."  Report at 21.

19

TD objects on two alternative theories.  First, TD argues that a common-law claim for conversion requires a greater showing by plaintiffs than a claim pursuant to § 3-419.  Second, in a footnote, TD suggests that common-law conversion may be precluded by § 3-419.  TD Objections at 19 n.11.

The Court adopts the Report's recommendation.

First, the New York Court of Appeals has long held that § 3-419 "adopts the common-law view which holds payment or collection over a forged indorsement to be a classical instance of conversion." *Hechter v. N.Y. Life Ins. Co.*, 46 N.Y.S.2d 34, 38 (1978); *see also* N.Y. U.C.C. § 3-419, cmt. 3 ("Subsection (1)(c) . . . adopts the prevailing view of decisions holding that payment on a forged indorsement is not an acceptance, but that even though made in good faith it is an exercise of dominion and control over the instrument inconsistent with the rights of the owner, and results in liability for conversion.").  The Complaint, which, as the Court has held, sufficiently states a claim under § 3-419, therefore sufficiently pleads a claim of common-law conversion.  *See Goldome*, 560 N.Y.S.2d at 86 (§ 3-419 "has all the attributes of the common-law action of conversion"); *McGregor v. McGregor*, 48 N.Y.S.3d 877, 883–84 (Sup. Ct., Kings Cty. 2017) (wrongful intent not an essential element of conversion); *see also* Pl. Response at 7–8.

Second, the Court cannot conclude that the U.C.C. precludes an otherwise plausible claim of common-law conversion.  Section 1-103(b) of the New York U.C.C. provides that "[u]nless displaced by the particular provisions of this act, the principles of law and equity . . . supplement its provisions."  N.Y. U.C.C. § 1-103(b).  The official comments further explain that "while principles of common law and equity may *supplement* provisions of the Uniform Commercial Code, they may not be used to *supplant* its provisions, or the purposes and policies those

provisions reflect . . . ." *Id.* § 1-103 cmt. 2 (emphasis original); *see Prudential-Bache Sec.*, 73 N.Y.2d at 273 ("Section 1-103 intended the common law to supplement, not contradict, the other provisions of the UCC.").

As applied to § 3-419, this principle prevents a plaintiff from sidestepping the U.C.C. by restating a failed § 3-419 claim as a claim for common-law conversion. *See Prudential-Bache Sec.*, 73 N.Y.2d at 272–73 ("[T]o permit resort to such common-law claims in instances where the Code unmistakably precludes recovery would be to contradict and effectively nullify [it]. It is inconceivable that those who drafted the UCC intended to forbid recovery under the Code, but to permit the same remedy for the same wrong outside the Code." (internal quotation marks omitted)). But TD does not cite any authority, and the Court is unaware of any, suggesting that a common-law conversion claim should be dismissed where, as here, plaintiff has adequately stated a claim under § 3-419. *Cf. Hechter*, 46 N.Y.2d at 38–39 (suggesting that common-law conversion action for payment over a forged indorsement survived the adoption of the U.C.C.). Accordingly, the Court adopts the Report's recommendation to deny TD's motion with respect to plaintiffs' common-law conversion claim predicated on inbound checks.[11]

## CONCLUSION

For the foregoing reasons, the Court adopts Judge Gorenstein's Report in full. The Court grants Capital One's motion, dismissing the claims against Capital One, without prejudice. The Court denies TD's motion with respect to plaintiffs' § 3-419 and conversion claims predicated on inbound checks, but grants TD's motion as to plaintiffs' negligence claim. The Clerk of Court is respectfully directed to close the motions pending at dockets 14 and 17.

---

[11] The Court further adopts the Report's conclusion that "all the defenses available to the defendants in a claim under Section 3-419 are available in a claim for conversion," Report at 21, to which no party objects.

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: May 29, 2020
      New York, New York